UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-cr-00072-SDN-2 |
| | ) | |
| KELLI MUJO, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON SECOND MOTION
FOR COMPASSIONATE RELEASE**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant previously moved for a reduction of her sentence or a placement into home confinement for the remainder of her sentence. (First Motion for Compassionate Release, ECF No. 701.) The Court denied relief but noted that Plaintiff could renew the motion if the relevant circumstances changed. (Order, ECF No. 724.) Plaintiff now moves for the second time for a reduction of her sentence. (Second Motion for Compassionate Release, ECF No. 725.) The Government opposes the motion. (Response, ECF No. 727.)

Following a review of the record and after consideration of Defendant's arguments, I recommend the Court deny the motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2015, Defendant was indicted on one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and oxycodone and one count of using or maintaining a drug involved premises and aiding and abetting the same. (Indictment, ECF No. 3.) After a trial in August 2016, a jury found Defendant guilty on

both counts. (Jury Verdict, ECF No. 367.) In March 2017, the Court sentenced Defendant to 168 months in prison. (Judgment, ECF No. 521.)

Defendant is incarcerated in a minimum-security federal facility in Alderson, West Virginia. In April 2022, Defendant submitted to the warden a request for compassionate release. (Administrative Request, ECF No. 701-1.) In July 2022, Defendant filed a motion with the Court seeking compassionate release or, in the alternative, release to home confinement. (First Motion for Compassionate Release, ECF No. 701.) Defendant primarily argued that (1) she needed to care for her adult son with special needs because he was not receiving adequate care at a state facility, (2) her medical conditions—including obesity, diabetes, and hypertension—and other symptoms—including numbness in her hands, blurred vision, and breathing difficulties—were not managed adequately within the prison environment, and (3) she was at increased risk from COVID-19. (*Id.*)

In January 2023, the Court denied the first motion for compassionate release. (Order, ECF No. 724.) The Court determined that Defendant's medical conditions did not constitute extraordinary and compelling reasons supporting a sentence reduction and that although several of the relevant sentencing factors favored a reduction, the weight of all relevant factors did not support a reduction because the offense was serious, and Defendant had served less than fifty percent of a sentence that the Court still found to be appropriate. (*Id.*) The Court, however, also noted that "[i]f [Defendant] serves a greater portion of her sentence, receives a medical diagnosis that confirms the severity of her breathing difficulties, or if her medical conditions worsen, these factors may warrant reconsideration of compassionate release and she may renew her request at that time." (*Id.* at 6.)

In April 2025, Defendant filed another motion for a sentence reduction. (Second Motion for Compassionate Release, ECF No. 725.) Defendant has been diagnosed with mucosa-associated lymphoid tissue lymphoma and contends that she will receive better treatment outside the prison environment if released. (*Id.*) According to the Government's opposition, Defendant has refused cancer treatment while in prison and is scheduled for release to home confinement on July 10, 2025. (Response, ECF No. 727; Update Regarding Custody Status, ECF No. 730.)[1]

## DISCUSSION

"Once a district court imposes a term of imprisonment, it may modify that term only to the extent authorized by 18 U.S.C. § 3582(c)." *United States v. Griffin*, 524 F.3d 71, 83 (1st Cir. 2008). Under § 3582(c), the sentencing court may: (1) correct an arithmetical, technical, or other clear error within 14 days after sentencing, *id.* § 3582(c)(1)(B), Fed. R. Crim. P. 35(a); (2) reduce a sentence upon the government's motion within one year of sentencing if the defendant provided substantial assistance investigating or prosecuting another person, *id.* § 3582(c)(1)(B), Fed. R. Crim. P. 35(b); (3) modify a sentence that was based on a guideline range which the Sentencing Commission subsequently lowered, *id.* § 3582(c)(2); and (4) reduce a sentence for certain defendants over the age of seventy who

---

[1] In its response, the Government asserted that Defendant was scheduled to be placed in home confinement on June 8, 2025, and Defendant did not file a reply or otherwise contest the Government's factual assertions and documentary support. Defendant's supporting documents filed with her motion also reflect that, with the time credits earned while she was in prison, Defendant was scheduled for conditional community placement on June 8, 2025, and final release on July 8, 2027. (Attachment at 6, ECF No. 725-1.) The Government later asserted that BOP staff had informed the Government that Defendant is now scheduled to be placed in home confinement on July 10, 2025.

3

have served more than thirty years in prison or for other defendants based on extraordinary and compelling reasons, *id.* § 3582(c)(1)(A). In addition, Congress has the power to authorize courts to modify sentences by enacting other statutes. *See id.* § 3582(c)(1)(B) (providing for sentence modifications "to the extent otherwise expressly permitted by statute"). Beyond that "handful of narrowly circumscribed exceptions," the sentencing court "has no jurisdiction to vacate, alter, or revise a sentence previously imposed." *United States v. Mercado-Flores*, 872 F.3d 25, 28 (1st Cir. 2017).

A court may only grant compassionate release (1) "upon motion of the Director of the Bureau of Prisons," or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). A defendant must exhaust the BOP process or wait for the 30-day period to lapse before he or she can seek relief from the sentencing court. *United States v. McIntosh*, No. 2:16-cr-00100-DBH, 2020 U.S. Dist. LEXIS 93356, at *2 (D. Me. May 28, 2020). The exhaustion provision is a claims-processing rule as opposed to a jurisdictional bar, *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022), but the requirement is generally mandatory "unless waived or conceded by the Government." *United States v. Waite*, No. 2:18-CR-00113-GZS, 2022 WL 2966505, at *2 (D. Me. July 27, 2022).

In her first motion, Defendant alleged specific details about her request for relief from the warden of her prison, and she attached a copy of the forms she submitted as well as a copy of communications between her and the Warden and Associate Warden. The

Government conceded that Defendant satisfied the exhaustion requirement for the first motion for compassionate release because more than thirty days had elapsed since Defendant requested relief from the Warden, but the Government argues that Defendant did not satisfy the exhaustion requirement for the current motion. Defendant asserted in her second motion for compassionate release that she "has satisfied this exhaustion requirement through the notification process, twice." (Second Motion for Compassionate Release at 3.) Defendant did not specify what she meant by her two attempts to provide notice. Defendant did not specify when or how she requested relief a second time, and she did not allege that it was after the denial of the first motion but more than thirty days prior to filing the second motion for compassionate release. Defendant also did not submit any documents reflecting a request or any response preceding the second motion. The Government asserts that Defendant did not file a request with the Warden before filing the second motion for compassionate release. The Government argues that Defendant's assertions are best interpreted as her belief that she is not required to exhaust the administrative remedies for her second motion because the Court previously noted that Defendant could submit another motion for compassionate release if her circumstances changed. Defendant did not file a reply disputing the Government's assertions or interpretation of her filings.

    The Government's argument has merit. The record lacks any evidence that Defendant exhausted the available administrative remedies after the Court denied her first motion. To the extent that Defendant claims that exhaustion is not required because the Court advised her of the right to file another motion if her circumstances changed,

Defendant's argument is unavailing. The Court's comments cannot reasonably be construed to relieve Defendant of the procedural requirement that she first request relief administratively. The Court, therefore, could deny the second motion for compassionate release without prejudice on exhaustion grounds alone. *See United States v. Cain*, No. 1:16-CR-00103-JAW-1, 2021 WL 388436, at *5 (D. Me. Feb. 3, 2021) (concluding that "a prisoner must demonstrate renewed compliance with the [exhaustion] requirement with each successive compassionate release motion" and rejecting a labeling distinction between "new" motions and "renewed" motions and looking instead to whether the second motion "relies on additional facts and arguments [the defendant] did not present in [the] previous motion for compassionate release").

Even if Defendant were deemed to have satisfied the exhaustion requirement, Defendant must still establish ground for relief under the statute. As relevant here, before granting a sentence reduction, a court must find that (1) extraordinary and compelling reasons support the reduction, (2) the factors set forth in section 3553(a) support the reduction, and (3) the reduction must be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). The applicable policy statement, U.S.S.G. § 1B1.13, specifies that the defendant must not be a danger to the safety of others and clarifies the meaning of "extraordinary and compelling" reasons.

The policy statement recognizes six categories of potentially extraordinary and compelling circumstances: "(1) medical circumstances; (2) age; (3) family circumstances; (4) the defendant having been a victim of abuse while in custody; (5) other reasons similar in gravity to those described in paragraphs (1) through (4); and (6) the defendant's having

6

received an unusually long sentence." *United States v. Vega-Figueroa*, No. 23-1125, 2025 WL 1576574, at *3 n.5 (1st Cir. June 4, 2025) (quotation marks and modifications omitted). The circumstances in question need not be unforeseen at the time of sentencing, U.S.S.G. § 1B1.13(e), rehabilitation alone is not extraordinary and compelling but can be considered in combination with other circumstances, *id.* § 1B1.13(d) and intervening legal changes should generally not be considered when determining whether extraordinary and compelling circumstances exist but may be considered when determining the extent of a reduction if there are other extraordinary and compelling reasons for a sentence reduction, *id.* § 1B1.13(c).

      Defendant's allegations and diagnoses (including lung cancer, diabetes, hyperlipidemia, myopia, hypertension, osteoarthritis of the knee, abnormal bleeding, and obesity) implicate the medical circumstances category of the Sentencing Commission's policy statement. Under the policy statement, medical issues can establish extraordinary and compelling reasons for a reduction when the defendant: (A) suffers from a terminal illness, (B) has a substantially diminished ability to provide self-care in the prison environment and lacks an expectation of recovery as a result of a serious physical or medical condition, a serious functional or cognitive impairment, or an aging process causing deteriorating physical or mental health, (C) is at serious risk of deteriorating health or death because of a need for long-term or specialized medical care that is not being provided, or (D) is at increased risk which cannot be mitigated adequately of severe medical complications or death from an outbreak of infectious disease or a declared public health emergency. *Id.* § 1B1.13(b)(1).

Defendant does not allege that her cancer diagnosis or any other diagnosis is terminal. The record would not support a finding of increased risk from an emergency in the prison environment or an inability to perform self-care in such an environment. Defendant also has not established insufficient long-term or specialized care given that she declined treatment for her cancer because she has a treatment plan that she intends to pursue during home confinement. Although Defendant's medical circumstances have worsened since her last motion, and although her cancer diagnosis makes her situation less common and more compelling than before, her new diagnosis does not alter the outcome and does not support a sentence reduction as she will soon be placed in home confinement and will no longer be in the prison environment.

Defendant also previously invoked the family circumstances category. The policy statement recognizes extraordinary and compelling reasons for a reduction following the death or incapacitation of the caregiver of the defendant's minor child or adult child who is incapable of self-care due to a disability or medical condition. *Id.* § 1B1.13(b)(3)(A). There can also be extraordinary and compelling reasons for a reduction when the defendant becomes the only available caregiver for an incapacitated spouse, registered partner, other immediate family member (such as a grandchild, grandparent, or sibling), or another similar individual. *Id.* § 1B1.13(b)(3)(B)–(D).

To the extent that Defendant intended to reassert her prior arguments regarding the special needs of her adult son, the outcome is the same for essentially the reasons explained in the Court's prior order. Defendant does not allege the death or incapacitation of her child's previous caregiver, and the policy statement does not recognize a defendant's

dissatisfaction with public agency caregivers as sufficient to establish extraordinary and compelling reasons for a sentence reduction. Furthermore, Defendant did not allege that she is needed to provide direct care for her son, but rather that she wished to be able to better advocate for her son within the public agency system. Defendant did not allege or attempt to explain why she could not advocate adequately for her son or otherwise assist with his care now that she will soon be released from the prison environment and be placed in home confinement.

A sentence reduction, therefore, is not warranted at this time.[2]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Defendant's second motion for compassionate release.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[2] As the Court previously noted, Defendant could file another motion (after exhausting the BOP internal remedies) if her circumstances change, including if she is not moved to community confinement as expected and if as a consequence, she is unable to pursue her intended course of treatment and assist with the care of her family members.

(14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of June, 2025.